1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ELBERT LEE VAUGHT,

11          Plaintiff,                    No. CIV S-10-1108 DAD P

12       vs.

13   B. MIRANDA, et al.,                  ORDER AND

14          Defendants.                   FINDINGS & RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  This matter is before the court on plaintiff's motion for summary judgment

18   pursuant to Rule 56 of the Federal Rules of Civil Procedure and on defendants' cross-motion for

19   summary judgment.

20                              **BACKGROUND**

21          Plaintiff is proceeding on his verified amended complaint against the following

22   defendants: Physician's Assistant Rafael Miranda, Dr. John Nepomuceno, Dr. Dorothy Swingle,

23   litigation coordinators Dianne Frazier and Drae Garbutt, and Jean Walker - the Chief of Health

24   Care for the California Department of Corrections and Rehabilitation (CDCR).  The claims

25   presented by plaintiff in this action arose while he was incarcerated at High Desert State Prison

26   (HDSP).  In his amended complaint, plaintiff alleges as follows.  On June 12, 2009, plaintiff

1

"wrenched his back" while working on "trash detail duties[.]"  (Doc. No. 11 at 3.)  Plaintiff felt

"a tingling sensation and numbing throughtout [sic] right leg," back pain and "searing" neck

pain.  (Id.)  Plaintiff went to the medical clinic and was seen by defendant Physician's Assistant

Miranda who ordered a three-day lay-in and "offered . . . a shot of tuoradol [sic] and tylenol

3's[.]"  (Id.)  Plaintiff advised defendant Miranda that he had received that same treatment once

before and that it did not relieve his pain.  Plaintiff also explained to Miranda that in 1998, he

had been stabbed over thirty times, that this old injury was likely the reason for his current

extreme pain and that "an MRI would probably reveal old injuries as well as the new aggravated

ones so I can get the correct treatment and pain meds."  (Id. at 3-4.)  Defendant Miranda,

nonetheless, did not modify plaintiff's treatment plan and ordered the lay-in, two tylenol 3's and

"script for T-3's" while scheduling a follow-up appointment.  (Id. at 4.)

On June 16, plaintiff saw defendant Physician's Assistant Miranda again and was

told that physical therapy would be ordered.  (Id.)  Plaintiff again told defendant Miranda that he

needed a MRI and an appointment with a pain specialist so that he could get a prescription to

alleviate his pain.  (Id.)  Defendant Miranda told plaintiff that he would probably have discomfort

for the rest of his life due to his past stabbing injuries and that morphine would help the pain but

that because prisoners were being taken off morphine, plaintiff would have to "deal with . . .

[the] pain some other way."  (Id.)  Defendant Miranda also told plaintiff that a MRI was not

indicated and never be approved.  (Id. at 5.)  Plaintiff contends that he "never received any kind

of pain meds[,] not even the tylenol 3's he was prescribed[.]"  (Id.)

Plaintiff filed inmate appeals complaining about his pain, sleep loss, and lack of

pain medication.  (Id. at 6.)  At the first level of review, plaintiff was told that a physical therapy

appointment would be scheduled and was required before a MRI could be ordered.  (Id.)

Defendant Dr. Nepomuceno signed this first level decision without examining or interviewing

plaintiff.  (Id.)  At the second level inmate appeal plaintiff again complained about his pain,

medical staff's refusal to order an MRI or to provide him pain medication, and the uselessness of

physical therapy.  (Id.)  Defendants litigation coordinator Garbutt and Dr. Swingle signed the

decision denying plaintiff's inmate appeal at the second level of review.  (Id.)  At the third level

of review, plaintiff's appeal again complained about the pain he was suffering and that the

promised physical therapy appointment had not yet been scheduled.  (Id. at 6-7.)  Defendant

Walker, Chief of Health Care for CDCR,  signed this third level decision denying plaintiff's

appeal without conducting any investigation.  (Id. at 7.)

    While waiting for the third level decision, plaintiff was called for a physical

therapy appointment but refused to go because it was then six months after his injury, he felt that

the belated appointment was of questionable benefit at that point, and he was receiving hepatitis-

C treatment for the previous three to four months and did not feel well that day.  (Id.)  On July 1,

2010, plaintiff was transferred to the Substance Abuse and Treatment Center (SATF) at Corcoran

State Prison and a MRI of plaintiff's back was ordered on August 8, 2010.  (Id. at 8.)

    Based on these factual allegations plaintiff alleges that he was denied adequate

medical treatment from June 12, 2009 to July 1, 2010 in violation of his rights under the Eighth

Amendment.  (Id.)  He seeks declaratory judgment, compensatory and punitive damages, and

treble damages.  (Id. at 9.)

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

    Summary judgment is appropriate when it is demonstrated that there exists "no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

1  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

2  to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered,

3  after adequate time for discovery and upon motion, against a party who fails to make a showing

4  sufficient to establish the existence of an element essential to that party's case, and on which that

5  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

6  concerning an essential element of the nonmoving party's case necessarily renders all other facts

7  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

8  whatever is before the district court demonstrates that the standard for entry of summary

9  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

10      If the moving party meets its initial responsibility, the burden then shifts to the

11  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

12  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

13  establish the existence of this factual dispute, the opposing party may not rely upon the

14  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

15  form of affidavits, and/or admissible discovery material, in support of its contention that the

16  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

17  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

18  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

19  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

20  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

21  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

22  1436 (9th Cir. 1987).

23      In the endeavor to establish the existence of a factual dispute, the opposing party

24  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

25  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

26  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

4

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) Advisory Committee's Note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

On October 25, 2010, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

**OTHER APPLICABLE LEGAL STANDARDS**

**I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

5

1   Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

2   (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

3   meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

4   omits to perform an act which he is legally required to do that causes the deprivation of which

5   complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

6           Moreover, supervisory personnel are generally not liable under § 1983 for the

7   actions of their employees under a theory of respondeat superior and, therefore, when a named

8   defendant holds a supervisorial position, the causal link between him and the claimed

9   constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

10  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

11  allegations concerning the involvement of official personnel in civil rights violations are not

12  sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

13  **II.  Eighth Amendment and Adequate Medical Care**

14          The unnecessary and wanton infliction of pain constitutes cruel and unusual

15  punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);

16  Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

17  In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove

18  that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

19  acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.

20  Seiter, 501 U.S. 294, 298-99 (1991).

21          Where a prisoner's Eighth Amendment claims arise in the context of medical

22  care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

23  deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth

24  Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need

25  and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050,

26  /////

1  1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133

2  (9th Cir. 1997) (en banc).

3       A medical need is serious "if the failure to treat the prisoner's condition could

4  result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

5  McGuckin, 974 F.2d at 1059 (quoting Estelle v. Gamble, 429 U.S. at 104).  Indications of a

6  serious medical need include "the presence of a medical condition that significantly affects an

7  individual's daily activities."  Id. at 1059-60.  By establishing the existence of a serious medical

8  need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation.

9  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

10       If a prisoner establishes the existence of a serious medical need, he must then

11  show that prison officials responded to the serious medical need with deliberate indifference.

12  Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials

13  deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in

14  which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94

15  (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard

16  to medical care, however, "the indifference to his medical needs must be substantial.  Mere

17  'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

18  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

19  105-06.  See also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in

20  diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

21  Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of

22  mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for

23  the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

24       Delays in providing medical care may manifest deliberate indifference.  Estelle,

25  429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from a delay in

26  providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d

1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332,

1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.

Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a]

prisoner need not show his harm was substantial; however, such would provide additional

support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett

v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

Finally, mere differences of opinion between a prisoner and prison medical staff

as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim.

Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v.

Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

1981).

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. Plaintiff's Arguments and Evidence

A.  Statement of Undisputed Facts

Plaintiff's statement of undisputed facts (Doc. No. 33)  is supported by reference

to plaintiff's verified complaint and defendants' answer filed on March 15, 2011.

The evidence submitted by plaintiff establishes the following.  After plaintiff

injured his back, defendant Physician's Assistant Miranda ordered a three-day lay-in for plaintiff

from his yard crew job assignment.  (Doc. No. 33 at 1.)  When defendant Miranda offered

plaintiff a Toradol[1] shot and tylenol 3's, plaintiff advised defendant Miranda that he had received

both once before and they did not relieve his pain.  (Id.)  Nonetheless, plaintiff was given the

three day lay-in so he would not have to report to work, two tylenol 3's, a prescription for

---

[1]  Plaintiff reports in various documents that he received an injection of "Tuoradol" or
"Turodol."  Defendants identify the medication plaintiff was given as "Toradol."  It appears that
the correct spelling for the medication plaintiff received is "Toradol" and the court shall use that
spelling hereafter.  Toradol is a nonsteroidal anti-inflammatory drug "used for the short-term
treatment of moderate to severe pain."  MedicineNet.com, http://www.medicinenet.com/
ketorolac-injection/article.htm (Feb. 6, 2012).

1  additional tylenol 3's, and was scheduled for a follow-up appointment on June 15, 2009.  (Id.)

2  However, plaintiff was not seen by defendant Miranda until June 16, 2009, and was told he

3  would be scheduled for physical therapy.  (Id. at 2.)  Defendant Miranda refused to order a MRI

4  for plaintiff on June 16 because he did not believe plaintiff needed one.  (Id.)  Plaintiff also did

5  not receive any pain medications at that time.  (Id.)

6          Plaintiff filed an inmate appeal (Log # HDP-31-09-12320) concerning defendant

7  Physician's Assistant Miranda's failure to see him on June 15, 2009, as promised.  (Id.)  The

8  informal appeal was granted because plaintiff had by then already seen defendant Miranda on

9  June 16.  (Id.)  However, plaintiff proceeded to the first level of review on this appeal because he

10 did not receive any pain medication from defendant Miranda on June 16.  (Id.)  In the decision at

11 the first level of review, plaintiff was informed that a physical therapy appointment was

12 necessary prior to obtaining authorization for a MRI.  (Id.)  Defendant Dr. Nepomuceno

13 approved this first level decision without interviewing plaintiff.  (Id. at 2-3.)  Plaintiff's appeal

14 was denied again at the second level of review with that decision being approved by defendants

15 Garbutt and Swingle.  (Id. at 3.)  Plaintiff pursued his inmate appeal expressing dissatisfaction

16 with his medical treatment to the third level of review.  (Id.)  A decision denying plaintiff's

17 appeal at the third level or review was approved by defendant Walker without investigation.  (Id.)

18          While plaintiff was waiting for a response to this third level appeal, he was

19 scheduled for a physical therapy appointment.  (Id.)  Plaintiff refused to attend physical therapy

20 because it was then six months after he had suffered his injury, he believed physical therapy

21 would not be effective at that point, and he was undergoing hepatitis-C treatment and not feeling

22 well on the day physical therapy was scheduled.  (Id.)

23          On July 1, 2010, plaintiff was transferred to SATF/Corcoran.  (Id. at 4.)  On

24 August 8, 2010, plaintiff was evaluated by Dr. Beregouskaya at Corcoran and an MRI of

25 plaintiff's spine was finally ordered.  (Id. at 4.)  Plaintiff was also issued a cane at that time

26 because of his back pain and difficulties with mobility.  (Id.)

B. Declaration and Exhibits

In support of his motion for summary judgment plaintiff has submitted several exhibits for the court's consideration.  The content of those exhibits is summarized below.

Plaintiff's Exhibit A is a declaration signed by plaintiff and fifteen other inmates, presumably past or current inmates of HDSP, all of whom state that Physician's Assistant Miranda has: (1) never physically put his hands on them during a medical examination; (2)  has refused to provide them medications that they had been prescribed prior to seeing him; (3)  has blatantly disregarded their medical needs and conditions thereby resulting in the wanton infliction of pain upon them; and (4) has never had their medical files on his desk while speaking to them about their medical needs.  (Doc. No. 31 at 3.)

Plaintiff's Exhibit B is made up of copies of photographs reportedly taken of plaintiff's injuries after he was stabbed multiple time on October 13,1998.  (Id. at 7-11.)

Plaintiff's Exhibit C is the doctor's report of plaintiff's lumbar spine x-ray taken on April 16, 2009.  (Id. at 13.)  It reports the following:

> FINDINGS:  No prior exams are available for comparison.  The lumbar bodies are normal in height.  Alignment is normal. Degenerative spurs are present anteriorly at L3-4.  The L4-5 disc space may be very slightly narrowed.  The pedicles appear intact. The S1 joints are unremarkable.
>
> IMPRESSION:  Minor degenerative change as described above.

(Id.)

Plaintiff's Exhibit D is the doctor's report regarding the MRI of plaintiff's lumbar spine taken on September 21, 2010 after plaintiff was transferred to the SATF.  (Id. at 15.)  The report noted that the plaintiff's disk spaces were well preserved, the vertebral body heights were within normal limits and that there was mild degenerative changes.  (Id.)  The report observed with respect to the L4-L5 region of plaintiff's spine,

> Mild to moderate narrowing of bilateral neuroforamina is noted secondary to a broad-based central disc bulge and mild unfolding of ligamentum flavum as the hypertrophy of the posterior elements.

1   (Id.)  The impression section of the doctor's report concluded as follows:

2          1.  At the L4-L-5 level mild to moderate narrowing of bilateral
           neuroforamina is noted secondary to a broad-based central disc
3          bulge and mild unfolding of ligamentum flavum as the hypertrophy
           of the posterior elements.  This is the worst level.
4
5          2.  At L5-S1 level mild narrowing of bilateral neuroforamina
           secondary to broad-based central disc bulge and mild unfolding of
           ligamentum flavum is noted.  Mild hypertrophy of the posterior
6          elements is also noted.

7   (Id. at 16.)

8          On that same date an MRI was taken of plaintiff's cervical spine with the

9   reported following results:

10         FINDING:  The disk spaces are well preserved except for mild disc
           bulge at C5-C6 and C7 level.  The vertebral body heights are
11         within normal limits.  There is no evidence of cord compression.
           No high signal intensity is seen within the spinal cord.
12

13  (Id. at 17.)  The following impression was reported with respect to plaintiff's cervical spine:

14         Mild to moderate broad-based disc bulge at C5-C6 level causes
           moderate narrowing of bilateral neuroforamina.  Mild narrowing is
15         seen at the C6-C7 level.  The posterior elements are within normal
           limits.
16

17  (Id. at 18.)

18         Plaintiff has also submitted medical records from his stay in the emergency room

19  following his stabbing in 1998 (id. at 20, Ex. E); a progress note relating to plaintiff second

20  inmate appeal, HDP 31-09-10049, which was partially granted with an indication that plaintiff

21  "was told that he has no physical findings that require an MRI[,]" refused physical therapy and

22  was given Gabapentin (id. at 22, Ex. F); copies of progress notes, physician orders and

23  medication records (id. at 24-27, Exs. G & H); a form indicating that plaintiff refused to go to

24  physical therapy on December 9, 2009 (id. at 31-32, Ex. I); a medical request form dated July 15,

25  2008, concerning plaintiff's chest, back and neck pain reportedly from a past stabbing incident

26  (id. at 34, Ex. J ); plaintiff's medical request form, dated June 12, 2009, reporting back and neck

11

1   pain (id. at 36, Ex. K); and a primary care provider progress note, dated May 11, 2010, quoting

2   plaintiff as stating, "I feel well and have no new problems" and reporting that plaintiff "says he

3   has completed 44 weeks of HCV Tx and that he does not have any adverse effects.  He says he

4   still has left upper arm parasthesias due to hx. of multiple stab wounds, but does have relief with

5   Gabapentin."  (id. at 38, Ex. L).

6       C. Plaintiff's Arguments

7           In his brief in support of his motion for summary judgment, plaintiff argues that

8   defendants were deliberately indifferent to his serious medical condition because they failed to

9   treat him for six months while he was in extreme pain, delayed his treatment and caused

10  unnecessary pain and suffering, did not order that he receive a MRI, and defendant Physician's

11  Assistant Miranda refused to have him  examined by a doctor or specialist.  (Doc. No. 34 at 2-5.)

12  Plaintiff also argues that defendants Dr. Nepomuceno, Dr. Swingle, litigation coordinator

13  Frazier, litigation coordinator Garbutt and Chief of Health Care Walker were all deliberately

14  indifferent to his serious medical needs in that they were aware of his medical problems, yet

15  signed off on decisions denying his inmate appeals without interviewing him.  (Id. at 4-5.)

16  **II. Defendants' Opposition**

17      A.  Defendants' Statement of Disputed and Undisputed Facts

18          Defendants' statement of disputed and undisputed facts are supported by citations

19  to plaintiff's medical records and his inmate appeals.  In response to plaintiff's statement of

20  undisputed facts, defendants provide the following evidence.

21          Plaintiff injured his back on June 12, 2009 and was referred to defendant

22  Physician's Assistant Miranda for treatment.  Defendant Miranda ordered a three day lay-in for

23  plaintiff and offered him a Toradol injection and Tylenol 3 for the pain.  (Doc. No. 36 at 2; Doc.

24  No. 36-2 at 2-5.)  Plaintiff saw defendant Miranda again on June 16, 2009.  (Doc. No. 36 at 3;

25  Doc. No. 36-2 at 7.)  At that time defendant Miranda prescribed Tylenol 3, ordered physical

26  therapy and referred plaintiff to the Hepatitis C clinic.  (Id.)

1          On June 15, 2009, plaintiff filed an inmate appeal (Log No. HDP-31-09-12320)

2   requesting treatment for his back injury and seeking an appointment with a specialist.  (Doc. No.

3   36 at 3; Doc. No. 36-2 at 13.)  The inmate appeal was granted at the informal level by defendant

4   appeals coordinator Frazier who noted that on June 16, 2009, plaintiff was referred for physical

5   therapy and to the "Hep C Clinic."  (Id.)  Plaintiff appealed that decision to the first level of

6   review, requesting to be seen by a specialist and to receive an MRI.  (Doc. No. 36 at 3; Doc. No.

7   36-2 at 13.)  Defendant Dr. Nepomuceno evaluated plaintiff's interview and unit health record

8   and partially granted his inmate appeal.  (Doc. No. 36 at 3; Doc. No. 36-2 at 16.)  Dr.

9   Nepomuceno 's appeal decision noted that plaintiff's pain had improved, that he had been

10  referred for physical therapy and provided tylenol for pain.  (Doc. No. 36-2 at 16.)  Defendant Dr.

11  Nepomuceno also determined that plaintiff's request for an appointment with a specialist and for

12  a MRI were not medically indicated at that time.  (Id.)  Plaintiff appealed that decision to the

13  second level of review on August 5, 2009.  (Doc. No. 36 at 3.)  The decision partially granting

14  that appeal was written by defendants Swingle, signed by defendant Garbutt and was essentially

15  the same as the first level response.  (Id. at 4; Doc. No. 36-2 at 19-20.)  Plaintiff appealed that

16  decision to the Director's Level of review on August 26, 2009.  (Doc. No. 36 at 4; Doc. No. 36-2

17  at 21-23.)  Defendant Walker denied that appeal on March 30, 2010, after determined that

18  plaintiff's medical condition had been evaluated by licensed clinical staff and that he was

19  receiving the treatment deemed medically necessary.  (Doc. No. 36 at 4; Doc. No. 36-2 at 21-23.)

20         On December 9, 2009, plaintiff had refused his physical therapy appointment

21  claiming it would not help his back pain.  (Doc. No. 36 at 4; Doc. No. 36-2 at 25-26.)

22         On December 29, 2009, plaintiff filed a second inmate appeal (Log No. HDP-31-

23  10-10049), renewing his request for a MRI of his spine.  (Doc. No. 36 at 4; Doc. No. 36-2 at 28-

24  34.)  Plaintiff was interviewed by Nurse Practitioner French and advised that physical therapy

25  was the first step before an MRI could be approved.  (Id.)  Defendant Dr. Nepomuceno partially

26  granted the appeal because plaintiff's pain medication, Gabapentin, was increased.  (Id.)

1  Defendant Frazier signed the first level response to plaintiff's appeal.  (Id.)  At the second level

2  review, defendant Swingle denied plaintiff's appeal on March 9, 2010.  (Id.)  Finally, plaintiff's

3  inmate appeal was denied at the Director's Level by defendant Walker on April 30, 2010.  (Id.)

4        Plaintiff was transferred to SATF on July 1, 2010  (Doc. No. 36 at 4.)  Dr. Olga

5  Beregovaskaya order an MRI examination of plaintiff's spine which was performed on

6  September 21, 2010.  (Id.; Doc. No. 36-2 at 36-39.)  The MRI of plaintiff's lumbar spine

7  revealed a mild bulge at C5-C7 and that the disc spaces were well preserved.  (Id.)  A CT scan of

8  plaintiff's cervical spine and lumbar spine was subsequently performed on October 16, 2010 and

9  both scans show no evidence of acute trauma.  (Doc. No. 36 at 4-5; Doc. No. 36-2 at 41.)

10       B.  Defendants' Arguments

11       Defendants argue that because plaintiff has failed to establish beyond dispute

12  every essential element of his Eighth Amendment claim, his motion for summary judgment

13  should be denied.  (Doc. No. 36 at 5.)  As to the element of deliberate indifference, defendants

14  contend that plaintiff has failed to provide admissible evidence establishing that defendants knew

15  of and disregarded a serious medical need on his part.  (Id. at 6.)  In particular, defendants argue

16  that plaintiff's allegation that an MRI of his spine was called for is supported only by plaintiff's

17  own opinion.  (Id. at 6-7.)  Defendants argue that plaintiff's reference to his Exhibits B, E, and J,

18  pertain only to his injuries suffered in a stabbing incident some thirteen years earlier are

19  irrelevant to his present claims and are inadmissible.[2]

20       Defendants also dispute plaintiff's interpretation of his Exhibit C, a doctor's

21  report regarding the x-ray taken of plaintiff's lumbar spine in 2009, as supporting his need for a

22  MRI.  (Id.)  Defendants point out that the doctor's report in fact merely revealed minor

23  degenerative changes in plaintiff's spine.  (Id.)  As for the doctor's report of the September 21,

24

25       [2]  Defendants also object to plaintiff's Exhibit B, consisting of photographs of him
following the stabbing incident, on the grounds that they are unfairly prejudicial and are likely
26  offered by plaintiff solely for the purpose of evoking sympathy.  (Doc. No. 36 at 7.)

2010 MRI performed after plaintiff's transfer to the SATF, defendants argue that it documents merely a mild bulge at C5-C7 and that plaintiff's disc spaces are well preserved, but it does not at all suggest that an MRI was medically indicated for plaintiff's condition while he was housed at HDSP. (Id.) In addition, defendants argue that plaintiff has offered no expert medical opinion that an MRI was medically necessary during the time plaintiff was at HDSP. (Id.)

Defendants also object to the declaration submitted by plaintiff and signed by himself and several other inmates complaining about the medical treatment provided to them by defendant Physician's Assistant Miranda on the grounds that it is improper opinion testimony by lay witnesses inadmissible under Rule 701 of the Federal Rules of Evidence. (Id.) Counsel also argue that the declaration fails to demonstrate deliberate indifference on the part of defendant Miranda in any event since none of the declarants have any medical training. (Id.)

Defendants note that neither plaintiff's treatment progress notes nor any of his exhibits establish that an MRI was called for at HDSP or that defendants were deliberately indifferent in failing to order one. (Id. at 7-8.) Defendants argue that the only evidence of deliberate indifference brought forward by plaintiff is his own conclusory declaration and that he is not competent to make a determination that an MRI was medically necessary or appropriate . (Id. at 8.) Furthermore, defendants contend that plaintiff's mere difference of opinion with the medical decisions of defendants and the course of treatment they elected to pursue does not amount to deliberate indifference. (Id.) In this regard, defendants argue that when there are alternative courses of treatment, a plaintiff must show that the chosen treatment was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to plaintiff's health. (Id.) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)). Defendants conclude that plaintiff has simply failed to come forward with any evidence that their refusal to order an MRI in his case was medically unacceptable. (Id.)

Defendants also argue that plaintiff has failed to present any evidence that would establish supervisorial liability on the part of defendants Frazier, Garbutt, Dr. Nepomuceno, Dr.

1    Swingle and Chief of Health Care Walker who were involved in considering and ruling upon

2    plaintiff's various inmate appeals.  (Id. at 9.)  Defense counsel notes that the only evidence

3    plaintiff offers in support of his claim that these defendants signed-off on inmate appeals

4    decisions without interviewing plaintiff and thereby failed to properly oversee defendant

5    Miranda, is plaintiff's own declaration.  (Id.)  Moreover, counsel contends that plaintiff has not

6    even alleged "any facts that the defendants, other than RA Miranda, personally participated in his

7    medical care, knew of the alleged violations, or implemented any deficient policies."  (Id.)

8    Counsel asserts that the evidence before the court establishes that none of the defendants treated

9    plaintiff and they cannot be liable for the alleged acts or omissions of others.  (Id.)  As for the

10    role of these defendants in addressing plaintiff's inmate appeals, defense counsel argues that

11    there is no liability for the mere review of an appeal.  (Id. at 10.)  According to counsel, there is

12    no evidence before the court "to suggest that Defendants caused his condition to go unattended,

13    or that Defendants knowingly disregarded a substantial risk of harm to Plaintiff."  (Id.)

14          In conclusion, defendants argue that plaintiff has failed to come forward with any

15    evidence that an MRI was medically indicated while plaintiff was incarcerated at HDSP.  (Id.)

16    Because plaintiff has failed to provide evidence establishing the essential elements of his claim,

17    defendants contend that his motion for summary judgment should be denied.  (Id.)

18    **III.  Plaintiff's Reply**

19          Plaintiff responds that the deliberate indifference by the named defendants is

20    evident by the fact that an MRI was ordered for him after plaintiff was transferred from HDSP

21    and that MRI showed damage that was not found in a previous x-ray.  (Doc. No. 38 at 1.)

22    Plaintiff also argues that the HDSP "policy" of requiring a six month wait before receiving

23    physical therapy and a MRI demonstrates deliberate indifference on the part of the defendants

24    that there was no justification for requiring him to receive physical therapy prior to a MRI or

25    referral to a specialist.  (Id. at 4-5.)  Plaintiff asserts that his exhibits are evidence that defendants

26    were aware of his serious medical needs as well as the necessity for an MRI due to his past

1  injuries.  (Id.)  Plaintiff argues that the MRI finally taken after he was transferred from HDSP

2  confirms that he had sustained additional injuries and that defendants' failure to provide adequate

3  treatment including an MRI demonstrates their deliberate indifference.  (Id. at 5-6.)

4          As to supervisory liability of defendants Frazier, Garbutt, Dr. Nepomuceno, Dr.

5  Swingle and Chief Walker, plaintiff again argues that each of these defendants they signed off on

6  his inmate appeals without evaluating or speaking to him.  (Id. at 6.)  According to plaintiff, this

7  establishes that each of these defendants were deliberately indifferent to his medical care because

8  they were aware of his problem in obtaining adequate treatment from defendant Miranda and did

9  nothing to prevent plaintiff's pain and suffering.  (Id. at 7.)

10  **IV. Analysis**

11          The parties have referred to the same medical and inmate appeal records in

12  arguing that summary judgment should be granted in their favor.  Those records establish that

13  following plaintiff's work-related injury on June 12, 2009, he received treatment for back and

14  neck pain including a three-day lay-in, tylenol 3, Toradol injection, follow-up appointment[3], and

15  referral for physical therapy.  Plaintiff contends that he should have received an MRI and,

16  presumably more effective pain medication.

17          As the court has discussed above, a claim of inadequate medical care in violation

18  of the Eighth Amendment has two elements:  (1) a serious medical need, and (2) deliberate

19  indifference to that serious medical need by defendants.  Here, assuming that plaintiff's back and

20  neck pain constituted a serious medical need, the court finds that plaintiff has failed to establish

21  the essential element of deliberate indifference on the part of the defendants.[4]  "A defendant must

22

23          [3]  The court does not find significant the fact that plaintiff's follow-up medical
24  appointment occurred one-day later than originally indicated by defendant Physician's Assistant
    Miranda.

25          [4]  This conclusion applies to all defendants in this action, including defendants Frazier,
    Garbutt, Dr. Nepomuceno, Dr. Swingle, and Chief Walker who were allegedly involved in the
26  processing and resolution of plaintiff's inmate appeals concerning his medical care.

purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Here, it is clear from the evidence submitted by the parties on summary judgment that plaintiff received medical treatment and that his complaints of pain were not ignored or disregarded.  Plaintiff's belief that he should have received a MRI is no more than a difference of opinions between plaintiff and the defendants who provided and/or reviewed his medical treatment.  Such a mere difference of opinion as to the proper course of treatment does not give rise to an Eighth Amendment claim.  See Estelle, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); Sanchez, 891 F.2d at 242 ("At most Sanchez has raised a difference of medical opinion regarding his treatment.  A difference of opinion does not amount to deliberate indifference to Sanchez' serious medical needs."); Hoang Minh Tran v. Haar, No. CV 10-07740 CJC (SS), 2012 WL 37506 at *3-4 (C.D. Cal. Jan. 9, 2012) (concluding that plaintiff's allegations that defendants refused to prescribe stronger and more effective medication for his pain reflects only a difference of medical opinion as to the necessary medication); Acero v. Thomatos, No. 1:10-cv-01308-SMS PC, 2011 WL 4710064 at *4 (E.D. Cal. Oct. 4, 2011) (concluding that plaintiff's challenge to prison medical staff's decision that a MRI was not indicated and a neurological consultation was unnecessary prior to weight loss and physical therapy reflected a mere difference of opinion between plaintiff and his medical providers).

          In addition, the court finds that plaintiff has failed to present evidence establishing that the decision to require that he undergo physical therapy prior to receiving a MRI was "medically unacceptable under the circumstances" and that such a course of medical treatment was chosen "in conscious disregard of an excessive risk" to plaintiff's health.  Jackson, 90 F.3d

1  at 332.  Plaintiff's claim that he has proven he received constitutionally inadequate medical care

2  at HDSP merely by establishing that he received an MRI once he was transferred to SATF is

3  misplaced.  The fact that plaintiff received an MRI at SATF at most reflects only a difference of

4  opinions among medical professionals as to the appropriate procedures to be employed in

5  treating plaintiff's back and neck pain.  Such a difference of opinion between doctors also does

6  not give rise to liability on a § 1983 claim.  See Toguchi, 391 F.3d at 1059-60 ("Dr. Tackett's

7  contrary view was a difference of medical opinion, which cannot support a claim of deliberate

8  indifference."); Johnson, 90 F.3d at 332 ("In other words, where a defendant has based his

9  actions on a medical judgment that either of two alternative courses of treatment would be

10  medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference,

11  as a matter of law."); Sanchez, 891 F.2d at 242 (difference of opinion between medical personnel

12  regarding the need for surgery does not amount to deliberate indifference to a prisoner's serious

13  medical needs).  Moreover, the court notes that plaintiff's MRI was taken on September 21,

14  2010, over a year after plaintiff was injured and after he had been treated with different pain

15  medications at HDSP.  The results of that 2010 MRI, which reflected nothing more than "mild to

16  moderate" conditions, does not establish that defendants were deliberately indifferent to

17  plaintiff's serious medical needs at HDSP in 2009.

18          The undisputed evidence before the court on summary judgment also establishes

19  that by the time defendants Frazier, Dr. Nepomuceno, Garbutt, Dr. Swingle, and Chief Walker

20  were involved in the processing and consideration of the inmate appeals, plaintiff had already

21  been referred to physical therapy, treated with pain medication and appeared to be improving.

22  See Doc. No. 36-2 at 16 ("During your interview you were seen and reevaluated for your chronic

23  low back pain.  You state the pain has improved since your last acute injury.  You were given a

24  Referral for Services (RFS) for Physical Therapy.  This is the first step in the treatment process.

25  You were given Tylenol for pain.") Similarly, the decision at the second level of review by

26  defendant Dr. Swingle concluded, "You have Tylenol ordered for pain and you have a referral for

19

1    Physical Therapy.  Your request to see a specialist and to have an MRI is not medically indicated

2    at this time." (Id. at 20.)

3            Because plaintiff has not come forward with evidence establishing that defendants

4    acted with deliberate indifference in treating his back and neck pain, his motion for summary

5    judgment in his favor should be denied.

6                  **DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

7    **I. Defendants' Motion**

8            Defendants present essentially the same statement of undisputed facts in support

9    of their cross-motion for summary judgment as they submitted in opposition to plaintiff's motion

10   for summary judgment.  (Doc. No. 37 at 3-6.)  Likewise, defendants support their motion by

11   providing the court with the same medical records and records of plaintiff's inmate appeals

12   which were submitted in opposition to plaintiff's motion for summary judgment.  (Doc. No. 37-

13   3.)  Finally, defendants have also submitted the declaration of defendant Dr. Nepomuceno in

14   which he offers his medical opinion that the treatment of plaintiff's back condition at HDSP was

15   appropriate and consistent with the standard of care and that plaintiff did not suffer any harm as a

16   result of the medical treatment provided by defendants Physician's Assistant Miranda, Dr.

17   Swingle or himself.  (Doc. No. 37-1 at 1-2.)

18            In moving for summary judgment in their favor, defendants argue that plaintiff

19   cannot prove that defendants acted with deliberate indifference to his serious medical needs.

20   Specifically as to defendant Miranda, defense counsel argues that the medical records reflect that

21   he provided plaintiff with appropriate medical treatment on June 12, 2009 and June 16, 2009.

22   (Id. at 7.)  Counsel again argues that plaintiff's belief that he should have received a MRI at

23   HDSP reflects nothing more than a difference of opinions between plaintiff and the medical

24   providers regarding the appropriate course of treatment which fails to demonstrate deliberate

25   indifference.  (Id.)

26   /////

1    As to defendants Frazier, Garbutt, Dr. Nepomuceno, Dr. Swingle and Chief

2  Walker, defense counsel argues that they are entitled to summary judgment in their favor on the

3  various grounds presented in opposition to plaintiff's motion for summary judgment.  First,

4  counsel argues that these defendants cannot be liable under § 1983 merely because they reviewed

5  and denied an inmate appeal filed by plaintiff.  (Id. at 9.)  Second, counsel asserts that plaintiff's

6  disagreement with defendants' medical and/or administrative judgment is insufficient to establish

7  deliberate indifference and the evidence establishes that these defendants did not knowingly

8  disregarded a substantial risk of harm to plaintiff.  (Id.)  Third, counsel argues that to the extent

9  plaintiff claims defendants Drs. Nepomuceno and Swingle are liable as supervisors of defendant

10  Physician's Assistant Miranda, there is no respondeat superior liability under § 1983.  (Id.)

11  Fourth, counsel contends that the evidence before the court establishes that none of these

12  defendants acted recklessly or knowingly in disregard of a serious medical need on plaintiff's

13  part.  (Id. at 10.)  Lastly, counsel argues that each of these defendants is entitled to qualified

14  immunity.  (Id. at 10-11.)

15  **II. Plaintiff's Opposition**

16    Plaintiff argues that defendant Miranda's "evaluation" of him was "obviously not

17  in accordance with plaintiff's wishes or needs" and that the other defendants "did nothing for

18  plaintiff except sign off on his 602 medical grievance without personally talking/examining

19  him[.]"  (Doc. No. 39 at 2.)  As for his need for an MRI, plaintiff argues that it is "not plaintiff's

20  self diagnosis . . . [but] plaintiff's common sense" that he had injured his back and required an

21  MRI.  (Id. at 3.)

22    Plaintiff contends the following facts in connection with defendants' motion for

23  summary judgment are disputed:  First, on the day of his injury, defendants contend that plaintiff

24  declined an injection of Toradol and the Tylenol 3; however, plaintiff contends that he did in fact

25  receive the Toradol shot and Tylenol 3.  (Id. at 5.)  Second, plaintiff was prescribed a 30-day

26  "script" for Tylenol 3; however, plaintiff contends that he never received the medication.  (Id.)

Third, according to defendant Miranda's notes following his interview of plaintiff concerning his first level inmate appeal, plaintiff had no further complaints of excruciating pain and Miranda explained to plaintiff that physical therapy was the first step in the treatment process and that and a MRI was not medically indicated. (Doc. No. 37, ¶ 4 at 4; Doc. No. 37-3 at 16-18.) Plaintiff denies making the statement about his pain, and although plaintiff acknowledges that defendant Miranda stated that a MRI was not medically indicated, plaintiff contends that defendant Miranda also stated that a MRI would not be done for budgetary reasons. (Doc. No. 39, ¶ 4 at 5.) Fourth, as to the benefits of physical therapy, plaintiff does not deny that he refused his physical therapy appointment, but contends that a nurse told him that having physical therapy six months after his injury would "do nothing[.]" (Id., ¶ 11 at 6.) Fifth, in response to defendants' assertion that the MRI taken on September 21, 2010 showed a mild bulge at C5-C7, plaintiff contends that the MRI results "show damage to both the lumbar and cervical disc." (Id., ¶ 15 at 6.)

Plaintiff repeats his argument that defendants were deliberately indifferent to his serious medical needs as shown by their failure to give him pain medication and a MRI, refusal to refer him to a specialist, and failure to provide physical therapy earlier. (Id. at 6-7.) Plaintiff contends that his medical care was medically unacceptable and that he was denied a necessary MRI solely due to budgetary constraints. (Id. at 7.) Plaintiff also contends that the delay he experienced in finally receiving the MRI and a cane constitutes a violation of the Eighth Amendment. (Id.) Plaintiff argues that defendants' deliberate indifference is shown by the fact that they were aware plaintiff was in pain yet required him to wait six months before scheduling physical therapy. (Id.) Lastly, plaintiff asserts that the subsequent MRI showing damage also confirms that defendants were deliberately indifferent to his medical care. (Id. at 10.)

**III. Defendants' Reply**

Defendants argue that in his opposition plaintiff has failed to present any evidence which would preclude the granting of summary judgment in their favor. (Doc. No. 40 at 1-2.) Defendants assert that there are no issues of material facts in dispute and that plaintiff's mere

1  dissatisfaction with the course of treatment pursued by defendants in addressing his condition is

2  insufficient to substantiate a claim of deliberate indifference.  (Id.)  Defendants argue that in

3  opposing their motion plaintiff has merely restated the factual allegations in his complaint.  (Id.)

4         Defendants do acknowledge the following.  Plaintiff was issued a temporary cane

5  at SATF on September 15, 2010 for one month, and on January 18, 2011 for two months.  (Id. at

6  3.)  He was also issued a temporary cane and bottom bunk from October 5, 2010 to January 5,

7  2011.  (Id.)  Plaintiff was approved for an egg crate mattress on January 5, 2010 and on May 5,

8  2011.  (Id.)  However, defendants argue that the issuance of these chronos does not establish a

9  triable issue of a material fact with respect to plaintiff's claims that he received constitutionally

10  inadequate medical care at HDSP in 2009.  (Id.)  In this regard, defendants do not dispute that

11  plaintiff presented a serious medical need; rather they argue that plaintiff has failed to come

12  forward with any evidence that they responded to that serious medical need with deliberate

13  indifference.  (Id.)

14         As to plaintiff's repeated assertion that a MRI should have been ordered and that

15  defendants failure to do so reflects deliberate indifference, defendants again argue that plaintiff

16  has failed to establish anything more than a disagreement with defendants' medical judgment.

17  (Id.)  As to plaintiff's contention that an MRI was medically indicated, defendants again argue

18  that the September 2010 MRI did not show serious damage as suggested by plaintiff and that, in

19  any event, plaintiff is unqualified to interpret those MRI results.  (Id.)  However, defendants note

20  that Dr. Nepomuceno, a physician and surgeon, has provided his medical opinion that an MRI

21  was not medically indicated and that plaintiff has offered only his own opinion to the contrary.

22  (Id. at 4.)  Lastly, defendants repeat their argument that the involvement of defendants in

23  reviewing plaintiff's inmate appeals is not actionable under § 1983.  (Id.)

24  **IV.  Analysis**

25         As was the case in addressing plaintiff's motion for summary judgment, the court

26  finds that critical issue is whether plaintiff has met his burden of coming forward with evidence

1    upon which it could be found that defendants acted with deliberate indifference in treating his

2    back and neck pain.  As set forth above in connection with plaintiff's motion for summary

3    judgement, the court finds that plaintiff has failed to do so.  This deficiency entitles defendants to

4    summary judgment in their favor with respect to plaintiff's Eighth Amendment claim.[5]

5            In so concluding, the court also finds that plaintiff's asserted factual disputes do

6    not involve material facts concerning whether defendants responded to plaintiff's serious medical

7    needs with deliberate indifference.  First, plaintiff assertion that he received a Toradol injection

8    and tylenol 3 at his first appointment with defendant Miranda only confirms that plaintiff

9    received medical treatment at HDSP and that the defendants did not disregarded plaintiff's

10   complaints of back and neck pain.  Second, plaintiff contention that he did not receive his

11   prescribed tylenol in one instance does not raise a material issue of fact since there is no evidence

12   that any of the defendants were aware of this problem or that they were responsible for ensuring

13   that a prescription was filled in a particular instance.  Third, whether defendant Miranda's

14   interview notes correctly noted plaintiff's reported pain level is not material to the issue of

15   deliberate indifference because plaintiff thereafter continued to receive medical treatment at

16   HDSP since the same document reflects that plaintiff was receiving tylenol for his pain.  (Doc.

17   No. 39 at 16-18.)  In addition, whether defendant Miranda stated that a MRI would not be

18   approved in part due to budgetary considerations is not a material dispute since plaintiff has

19   presented no evidence that a MRI was medically necessary at that time.  Fourth, plaintiff's belief

20   that delayed physical therapy would be of no benefit to him as well as plaintiff's own

21   interpretation of the results of his 2010 MRI are nothing more than plaintiff's own opinion about

22   the treatment he should have received and fail to raise a disputed issue of material fact as to

23   whether defendants' were deliberately indifferent to his medical care.

24   _____

25      [5]  In light of this conclusion, the court need not address defense counsel's arguments that the involvement of a defendant's in reviewing plaintiff's inmate appeals is insufficient as a matter of law to establish that defendant's liability with respect to the medical care provided to

26   plaintiff or that defendants are entitled to qualified immunity.

1    The court finds  unpersuasive plaintiff's argument that the delay he experienced in

2    receiving a MRI and being scheduled for physical therapy demonstrates deliberate indifference

3    on the part of defendants.  Plaintiff has offered only his opinion that such treatment should have

4    been provided earlier.   The court notes that defendants' have offered the declaration of defendant

5    Dr. Nepomuceno who affirms that the management of plaintiff's back condition was appropriate

6    and that while plaintiff was housed at HDSP, a MRI of his back was not medically indicated.

7    Plaintiff has offered no evidence to dispute this medical opinion.  See Fleming v. Lefevere, 423

8    F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of

9    care does not create a triable issue of fact because he has not shown that he has any medical

10   training or expertise upon which to base such an opinion.").

11   As observed at the outset, summary judgment should be entered, after adequate

12   time for discovery and upon motion, against a party who fails to make a showing sufficient to

13   establish the existence of an element essential to that party's case, and on which that party will

14   bear the burden of proof at trial.  See Celotex Corp., 477 U.S. at 322; see also Addisu v. Fred

15   Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely

16   colorable . . . does not present a genuine issue of material fact" but rather there "must be enough

17   doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment

18   motion.")  The moving defendants have satisfied their initial burden of coming forward with

19   evidence  demonstrating the absence of a genuine issue of material fact with respect to the claims

20   against them.  Here, plaintiff has failed to respond with any proof from which a reasonable trier

21   of fact could find in his favor with respect to his claim.  Therefore, the court concludes that the

22   moving defendants are entitled to summary judgment in their favor on plaintiff's claim that they

23   were deliberately indifferent to plaintiff's serious medical need in violation of his rights under

24   the Eighth Amendment.

25   /////

26   /////

**CONCLUSION**

1                In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to randomly assign this case to a District Judge.[6]

                Also, IT IS HEREBY RECOMMENDED that:

                1.  Plaintiff's April 20, 2011 motion for summary judgment (Doc. No. 30) be denied;

                2.  Defendants' May 12, 2011 cross-motion for summary judgment (Doc. No. 37) be granted; and

                3.  This action be dismissed.

                These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 15, 2012.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
vaug1108.57

---

[6]  Although plaintiff consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c) (Doc. No. 4), it appears that defendants failed to respond to the court's directive that they either do so or request reassignment (Doc. No. 20).